IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ISIAH A. JONES, III, | : | |
| *Plaintiff* | : | **CIVIL ACTION** |
| v. | : | |
| | : | |
| GEICO CHOICE INSURANCE | : | |
| COMPANY, | : | |
| *Defendant* | : | |

---

| | | |
|---|---|---|
| MICHAEL PURCELL, JR., | : | |
| *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| GEICO CASUALTY COMPANY, | : | |
| *Defendant* | : | **No. 22-558** |

## MEMORANDUM

PRATTER, J.                                           JULY 27, 2022

   Two plaintiffs, proposing to represent classes of similarly situated Pennsylvania

single-vehicle insurance policyholders with GEICO, have sued two GEICO subsidiaries alleging

that GEICO charged them for a stacking benefit in their automobile insurance policies that they

did not, and could not, receive. In other words, the plaintiffs allege that they paid for illusory

automobile insurance coverage. GEICO moves to dismiss the complaints. As they clarified at oral

argument, however, the plaintiffs are, at base, asking this Court to rewrite the Pennsylvania Motor

Vehicle Financial Responsibility Law. The Court declines to do so and, thus, grants GEICO's

motions to dismiss in full.

### BACKGROUND

   Plaintiffs Isiah Jones, III and Michael Purcell, Jr. each propose to represent a class of

similarly situated Pennsylvania residents against two different subsidiaries of GEICO: GEICO

1

Choice Insurance Company and GEICO Casualty Company, respectively. For purposes of this motion the Court refers to the defendants collectively as "GEICO."[1] The plaintiffs claim that GEICO offered stacked underinsured and uninsured motorist coverage when, based on the information provided to GEICO in their application, GEICO knew or should have known that they were applying for a single-vehicle policy and would not have been eligible to receive stacked benefits under any circumstance. Before digging into the plaintiffs' claim, however, the Court briefly explains what insurance stacking is in the first place.

*Uninsured* motorist coverage ("UM") applies when an insured "suffers injury or damage caused by a third-party tortfeasor who is uninsured." *Gallagher v. GEICO Indem. Co.*, 201 A.3d 131, 132 n.1 (Pa. 2019). On the other hand, *underinsured* motorist coverage ("UIM") applies "when a third-party tortfeasor injures or damages an insured and the tortfeasor lacks sufficient insurance coverage to compensate the insured in full." *Id.*

Stacking is the combining of the coverage limits. This can happen in two different ways. First, a single insured can stack coverage limits on multiple vehicles under a single umbrella insurance policy (*e.g.*, one person has more than one vehicle insured by GEICO), which is called "*intrapolicy* stacking." Second, a single-vehicle insured can receive stacked benefits if he is an insured under more than one separate insurance policies that provide stacked UM/UIM benefits (*e.g.*, an insured has a policy and a member of the insured's household has a separate policy covering a different vehicle), which is called "*interpolicy* stacking." *See, e.g.*, 12 Steven Plitt et al., *Couch on Insurance* § 169:7 (3d ed. 2021 update).

---

[1] Although filed against two different GEICO subsidiaries, the two cases are identical in substance with identical pending motions to dismiss. As a result, the Court consolidated the cases. Doc. No. 17. Thus, for ease of reference, the Court will only cite to the documents in the first-filed case, *Jones v. GEICO Choice Ins. Co.*, No. 22-558. However, in a technical sense these are two separate motions to dismiss two separate complaints against two separate entities.

The plaintiffs claim that GEICO sold them a single-vehicle policy with stacked uninsured and underinsured motorist benefits but that none of the members of the proposed class (1) had another vehicle, (2) had another insurance policy for purposes of UM or UIM coverage, or (3) had any other vehicle or insurance policy in their household such that they could have recovered stacked UM or UIM benefits.[2] In other words, they claim that they were sold stacking coverage from which they could never receive stacked benefits, meaning GEICO sold them illusory coverage, and because the coverage was only "illusory," they allege they suffered an injury in the form of an increased monthly premium payment, *i.e.*, they paid for something they did not call upon. GEICO's offer of this coverage, the plaintiffs allege, violated the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL). The plaintiffs have brought claims for declaratory relief, return of premiums, unjust enrichment, violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), fraud, and injunctive relief. Other plaintiffs have filed an identical suit in this district against different insurance companies. *Berardi v. USAA Gen. Indem. Co. et al.*, Nos. 22-cv-813 & 22-cv-832, 2022 WL 2109193 (E.D. Pa. June 10, 2022).

GEICO moves to dismiss both complaints in full, arguing that the coverage was not illusory and that the plaintiffs' legal argument is a misunderstanding of the relevant case law. The Court heard oral argument on this matter, leaving it ripe for the Court's resolution. For the reasons more fully explained below, the Court grants GEICO's motions to dismiss in full.

---

[2] The text of the stacking benefit for uninsured and underinsured motorist coverage is not at issue in this case. For reference, the text of the coverage provision is in the plaintiffs' policy. *See, e.g.*, Policy at 30–35, Ex. A to Compl., Doc. No. 1-1, at ECF 62–67.

## LEGAL STANDARD

A plaintiff must set out in a complaint a cause of action and "enough facts" to make that cause of action "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). On a motion to dismiss for failure to state a claim, the Court takes all well-pleaded facts as true and draws all reasonable inferences in the light most favorable to the plaintiff. *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 105 (3d Cir. 2018). The Court does not decide whether the plaintiff's story *is* what happened, just whether it plausibly *could have* happened. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In addition to the complaint, the Court may consider "exhibits attached to the complaint, matters of public record," and "undisputedly authentic documents" upon which the claims rest, *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010), plus documents "integral" to a complaint, such as the insurance contract at issue in this particular dispute, *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).[3]

## DISCUSSION

This Court has jurisdiction of these cases under the Class Action Fairness Act (CAFA), which only requires minimal diversity, an alleged class of at least 100 members, and an amount in controversy over $5,000,000. 28 U.S.C. § 1332(d)(2), (d)(2)(A), (d)(5)(B). The GEICO insurance policies at issue have a choice of law provision stating that Pennsylvania law will apply. The Court, exercising diversity jurisdiction, applies the choice of law rules of the forum state, Pennsylvania, and Pennsylvania courts honor choice of law provisions, meaning Pennsylvania law will apply

---

[3] The plaintiffs also cite to and seek to rely on the affidavit of a purported insurance expert to support their opposition to GEICO's motions. *See* Pl.'s Resp., at 33, Doc. No. 9-3; Aff. of James W. Stevenson, Ex. E to Pl.'s Resp., Doc. No. 9-4, at ECF 54. Beyond the fact that the plaintiffs did not attach this material to their complaints, reference it in their complaints, or rely on it in their complaints, *Schmidt*, 770 F.3d at 249, the Court does not consider this document because it would be improper to do so at this stage of the case. No expert has been qualified in this case and no procedure is available to introduce such an affidavit under circumstances extant.

4

here. *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994). Thus, the Court must predict what the Pennsylvania Supreme Court would do if presented with the plaintiffs' claims. *Baptiste v. Bethlehem Landfill Co.*, 965 F.3d 214, 225 (3d Cir. 2020).

The plaintiffs claim that GEICO's coverage was illusory and pose six counts: Declaratory Relief (Count I), Return of Premiums (Count II), Unjust Enrichment (Count III), Violation of the Pennsylvania Consumer Protection Law (Count IV), Common Law Fraud (Count V), and Injunctive Relief (Count VI). Before analyzing these individual counts, however, the Court must first address whether the coverage GEICO provided was illusory.

## I.    The Coverage That GEICO Provided Was Not Illusory

Coverage is illusory "where the insured purchases no effective protection." *Ultimate Hearing Sols. II, LLC v. Twin City Fire Ins. Co.*, 513 F. Supp. 3d 549, 562 (E.D. Pa. 2021); *accord* 7 Steven Plitt et al., *Couch on Insurance* § 101:20. Stated slightly differently, "[c]overage under an insurance policy is not illusory unless the policy would not pay benefits under any reasonably expected set of circumstances." *TIG Ins. Co. v. Tyco Int'l Ltd.*, 919 F. Supp. 2d 439, 466 (M.D. Pa. 2013) (quoting *Lexington Ins. Co. v. Am. Healthcare Providers,* 621 N.E.2d 332, 339 (Ind. App. Ct. 1993)) (subsequent history omitted); *accord Atl. Cas. Ins. Co. v. Zymblosky*, No. 1167 MDA 2016, 2017 WL 3017728, at *6 (Pa. Super. Ct. July 17, 2017). This turns on the factual circumstances of each particular case. *Heller v. Pa. League of Cities and Municipalities*, 32 A.3d 1213, 1223 (Pa. 2011); *Couch on Insurance* § 101:20.

Under Pennsylvania law, the insured has the burden to establish coverage under an insurance policy. *Nationwide Mut. Ins. Co. v. Cosenza*, 258 F.3d 197, 206 (3d Cir. 2001) (citing *Erie Ins. Exch. v. Transamerica Ins. Co*., 533 A.2d 1363, 1366–67 (Pa. 1987)). As such, the insured also has the burden of proving that coverage is illusory. *St. Mary's Area Water Auth. v. St. Paul Fire & Marine Ins. Co.*, 472 F. Supp. 2d 630, 635 (M.D. Pa. 2007).

The Pennsylvania Motor Vehicle Financial Responsibility Law requires that insurers provide stacked UM and UIM as the default coverage in Pennsylvania. 75 Pa. Con. Stat. § 1738(a); *Gallagher*, 201 A.3d at 137. As the Pennsylvania Supreme Court explained, the "MVFRL makes clear that to effectuate a waiver of UM/UIM coverage, an insurer must provide the insured with a statutorily-prescribed waiver form, which the named insured must sign if he wishes to reject the *default provision of stacked coverage.*" *Gallagher*, 201 A.3d at 137 (emphasis added) (citing 75 Pa. Con. Stat. § 1738(d)); *accord Toner v. Travelers Home & Marine Ins. Co.*, 137 A.3d 583, 586–87 (Pa. Super. Ct. 2016). That is because the MVFRL reflects "the clear intention of the General Assembly to compel insurers to provide stacking coverage absent a valid waiver." *Craley v. State Farm Fire and Cas. Co.*, 895 A.2d 530, 539 (Pa. 2006). This applies to both multi-vehicle and single-vehicle policies. *Id.* at 540. Thus, under Pennsylvania law, an insurer must both provide stacking and the chance to waive that stacking coverage, even on single-vehicle policies.

The plaintiffs contend, however, that providing stacking coverage to them, as required by law, means GEICO provided illusory coverage. This argument is based on a statement by Pennsylvania's insurance commissioner, cited by the Pennsylvania Supreme Court in *Craley* as to why single-vehicle policyholders obtained an actual (meaning not illusory) benefit from stacking coverage:

> [S]ingle-vehicle policy holders could obtain a real benefit from the provision of stacking in at least two situations: (1) where the insured is injured in his own vehicle insured with uninsured motorist coverage and is also covered as an insured under another policy providing uninsured motorist benefits, and (2) where the individual is injured in a vehicle other than his own insured vehicle and is an insured under the non-owned vehicle's policy, which also has uninsured motorist coverage (such as an employer's vehicle).

*Id.* at 537.

Relying exclusively on these two scenarios, the plaintiffs argue that they receive no benefit from the first scenario because they are not covered as an insured under another policy, and that

they receive no benefit from the second scenario because that scenario has, according to the plaintiffs, been eliminated by the Pennsylvania Supreme Court's later decision in *Generette v. Donegal Mut. Ins. Co.*, 957 A.2d 1180 (Pa. 2008). In other words, the plaintiffs' argument is that the two identified scenarios are the *only* circumstances in which an insured receives stacking benefits and, they argue, they did not fall within either, thus making their coverage illusory.

GEICO disputes the plaintiffs' understanding of the law, arguing that the plaintiffs' argument fails on its face both because *Generette* did not do what the plaintiffs argue and because there are other scenarios in which the plaintiffs would have received stacked benefits in the event of an accident.

Plaintiffs' legal argument, indeed, suffers from numerous flaws.

A. The Plaintiffs' Reliance on the Insurance Commissioner's Statement Is Overstated and Inaccurate

To begin, the plaintiffs read the statement of the insurance commissioner too strictly. The statement that the plaintiffs rely on is quite explicit that the two named scenarios are *not* the only ones in which a single-vehicle policyholder would receive a stacking benefit. Indeed, the regulator's opinion stated that there were "*at least* two situations" in which a single-vehicle policyholder would recover stacked benefits. *Craley*, 895 A.2d at 537 (emphasis added). Thus, quite clearly, the insurance commissioner contemplated that there might be other scenarios in which a single-vehicle policyholder receives stacked benefits but, in this statement, only named two explicitly. Here, the plaintiffs' argument stumbles out of the gate because their legal theory is premised entirely on there being *only* two scenarios in which a single-vehicle policyholder obtains stacked benefits and then arguing that neither scenario exists under the facts of this particular case. That reading of the commissioner's statement is simply not accurate.

Turning next to those two specific scenarios identified by the commissioner, the plaintiffs' argument fails there, too. Take, for example, the second scenario, which the plaintiffs claim was eliminated by the *Generette* decision. In that case Ms. Generette was injured as a guest passenger in a vehicle that collided with a third-party vehicle. *Id.* at 1182. The damages for Ms. Generette's injuries exceeded the coverage under the third-party tortfeasor's policy, so Ms. Generette recovered $50,000 in UIM coverage from the driver's Nationwide policy. *Id.* She then sought to recover an additional $35,000 in UIM coverage under her own policy with Donegal Mutual. *Id.* However, Ms. Generette had contracted for limited underinsured motorist coverage with Donegal and waived her stacking coverage. *Id.* at 1182–83. Ms. Generette's insurer, Donegal, denied her claim based on the language in the "Other Insurance" clause of her policy, arguing that the $50,000 recovery from Nationwide already exceeded the $35,000 limit in her own policy. *Id.* at 1183. After multiple rounds of appeals, the parties presented the Pennsylvania Supreme Court with two issues.

As relevant here, the Pennsylvania Supreme Court had to determine whether Ms. Generette's waiver of stacking in her own insurance policy meant she could not recover underinsured benefits from her own policy because she had also recovered underinsured benefits from the driver's Nationwide policy. *Id.* at 1187. The Pennsylvania Supreme Court concluded that Ms. Generette's stacking waiver under her own policy did *not* preclude her recovery of underinsured benefits from her own policy because the definition of "insured" in the MVFRL did not include the scenario of a guest passenger. *Id.* at 1190. As such, the Pennsylvania Supreme Court held that Ms. Generette's stacking waiver in her own policy did not prevent her from recovering her own underinsured benefits *in addition to* recovering under the driver's policy. *Id.* ("[W]e hold that [Ms. Generette's] recovery under [her] policy is not barred by her waiver of stacking . . . ."); *see also Vensko v. Encompass Home & Auto Ins. Co.*, No. 1316 WDA 2014, 2015

8

WL 6549225, at *3 (Pa. Super. Ct. Sept. 11, 2015) ("The decision in *Generette* changed the law by holding [that] waiver of stacked UIM coverage only applied to policies between statutorily defined insureds." (quoting *A. LaCaffinie v. Standard Fire Ins. Co.*, 55 A.3d 132 (Pa. Super. Ct. July 11, 2012) (unpublished memorandum at 5–6))).

Thus, quite simply, the plaintiffs' argument on this point is incorrect. *Generette* included *nothing* about the scenario described by the insurance commissioner in which an individual has *not* waived stacking, is injured in a vehicle other than his own insured vehicle, and is an insured under the non-owned vehicle's policy. *See Berardi*, 2022 WL 2109193, at *3 ("Plaintiffs have not cited, either in their briefs or at oral argument, any cases in the fourteen years since *Generette* was decided that have interpreted *Generette* as Plaintiffs do.").

A simple twist on the facts of *Generette* illustrates this point. Consider a person, such as Mr. Jones, who purchases a single-vehicle policy and does *not* waive stacking coverage (meaning he has stacking). Mr. Jones then gets married or moves back home with his relatives, into a household with another insured who also has stacking coverage such that Mr. Jones would be an insured under that policy. Mr. Jones is then riding as a passenger in one of these other insured's vehicles when that vehicle is in an accident with a third-party tortfeasor whose insurance is insufficient to cover Mr. Jones's damages. *Generette* says *nothing* about Mr. Jones's ability or inability to recover stacked underinsured benefits from the driver's policy and his own policy. In short, the plaintiffs' legal argument, premised entirely on *Generette* having eliminated one of the (non-exhaustive) scenarios mentioned by the insurance commissioner, is wrong.

The plaintiffs' legal argument based on the first (non-exhaustive) scenario identified by the insurance commissioner above is similarly lacking. Under that scenario, the commissioner identified what would be *interpolicy* stacking. *See Craley*, 895 A.2d at 537. The plaintiffs argue

that they were not covered as an insured under another policy with stacking, meaning if they were in an accident, they would not have been paid stacked benefits. To be sure, taking the facts in the complaints as true, each plaintiff in this case was not a named insured on any other policy at the time he purchased his policy with GEICO and, according to the plaintiffs, they never were during the entirety of the time they held these policies.

But, as GEICO points out, there is the very real possibility that the plaintiffs could have become a named insured under another person's policy at any point *after* they purchased their single-vehicle policy with stacking coverage. The plaintiffs' retort that the *possibility* they would become an insured under another's policy is meaningless because if they were in an accident before that happened, or if they never became an insured under another's policy, they would not have received stacked benefits in the event of an accident.[4]

The plaintiffs may be correct in a highly technical sense, but it does not affect their argument about illusory coverage. The plaintiffs' position boils down to the argument that a single-vehicle policyholder who declines to waive stacking coverage might not be paid stacked benefits if he were to get into an accident on the first day of his coverage. True enough. At that particular moment in time, an insured who declined to waive stacking would not receive stacked benefits. But that does not mean the coverage is illusory. To demonstrate that coverage is illusory, the plaintiffs must show that "the policy would not pay benefits under *any* reasonably expected set of

---

[4] The plaintiffs spend a great deal of time explaining that an insurance contract is an "aleatory contract." GEICO does not dispute this. An aleatory contract is legal jargon for a type of contract in which one or both party's obligation of performance is "[d]ependent on uncertain contingencies." *Aleatory*, *Black's Law Dictionary* (11th ed. 2019). It is the type of contract where one party, the insurer, may never have to perform its contractual obligations. *See* 1 Steven Plitt et al., *Couch on Insurance*, § 1:10; 7A *id.* § 108:1. In a car insurance contract, an insurer's performance may take the form of subrogation on the insured's behalf, providing an attorney for the insured or, more simply, a payout on a claim. *See* 1 *id.* § 1:50. Thus, an insurer may never need to perform any of these obligations unless the insured gets in a car accident. The plaintiffs argue that, under the facts of this case, at the time of an accident the insurer would not have had to pay out stacked benefits. But, as explained more fully in this opinion, this argument is insufficient to demonstrate that their coverage was illusory.

circumstances." *TIG Ins. Co.*, 919 F. Supp. 2d at 466 (emphasis added) (internal quotation marks omitted). Here, there are numerous reasonably expected circumstances in which the policy would pay stacked benefits.

Consider a common phenomenon occurring recently: a post-college adult who, during the COVID-19 pandemic, moved back in with his family. That person may have purchased or leased a car, and procured insurance for it, knowing that he was moving back home a month later where his parents also had insurance policies with stacking. As soon as he moved home, he would have joined the "household" for purposes of his GEICO insurance policy and would have been a named insured under his parents' car insurance policy such that he would have recovered stacked benefits (*interpolicy* stacking) in the event of an accident. *See* Policy at 30 ¶ 2 & 33 ¶¶ 1–2, Ex. A. to Compl., Doc. No. 1-1, at ECF 62, 65 (defining "Household Member"). Or consider a mother-in-law about to move in with one of her adult children and that child's spouse who owns two vehicles and has policies with stacking coverage. The mother-in-law purchases a car and her own single-vehicle insurance policy with stacking coverage knowing that she will soon be joining her adult child's "household." As soon as she moves in, she and her adult child will both benefit from *interpolicy* stacking in the event of an accident. *Id.*; *see id.* at 13 ¶ 8, Doc. No. 1-1, at ECF 46 (defining "Relative"). The benefit exists and responds as may become operative, and the mother-in-law can know that full well as she goes about her business. That knowledge and comfort is itself a benefit.

In sum, the plaintiffs' theory that GEICO provided illusory coverage is not accurate and, besides, they have not met their burden to prove otherwise.

B. The Plaintiffs' Theory Would Invert the Current Statutory Scheme

Beyond the fact that their coverage was not illusory, the plaintiffs' theory of the case fails for additional reasons. As explained above, the MVFRL mandates that insurers provide stacked

coverage as the default coverage in Pennsylvania and also requires that insurers offer an insured a statutorily prescribed waiver to decline this coverage. *See* 75 Pa. Cons. Stat. § 1738; *Gallagher*, 201 A.3d at 137; *Toner*, 137 A.3d at 587.

As the plaintiffs' counsel articulated at the oral argument, however, the plaintiffs' position is that insurers should continue to provide the default stacking coverage to single-vehicle insureds without any other household policies (as they are required to by law), but that insurers should simultaneously and automatically reduce the monthly premium to account for the fact that plaintiffs, like those here, will allegedly not receive stacked benefits. As the plaintiffs framed it, whether or not an insured waives stacking would have no effect on the coverage he ultimately receives.[5] Under the plaintiffs' plan, if an insured later became a named insured under another household policy, the insured could then contact the insurer and opt in to stacking benefits. But this tack, too, fails for three fundamental reasons.

First, the plaintiffs' theory would invert the current statutory scheme. The current scheme in Pennsylvania is an opt-out scheme—insureds automatically receive stacking coverage unless they waive it. Under the plaintiffs' plan, a single-vehicle insurance applicant who indicates he has no other vehicle and no other members in his household (meaning he is not an insured under any other policy) but who later wants stacked insurance would need to affirmatively contact the insurer and opt in to the stacking coverage and the concomitant higher premium. But that is not how the Pennsylvania legislature established the statutory scheme, and the Court "cannot and should not interpose [its] views on public policy for those of the legislature" because the Court's role is to

---

[5] The plaintiffs never reconciled how the statutorily required waiver would work under their plan. The plaintiffs assert that the insurer should not provide any stacking coverage and not charge the increased premium even if an insured did *not* waive stacking. On the other hand, if an insured *did* waive stacking, the insurer would also not provide stacking coverage and not charge any increased premium. Thus, the plaintiffs' theory would render the statutorily prescribed waiver superfluous. But courts do not construe statutes in that way. *See* 1A Norman Singer & Shambie Singer, *Sutherland Statutes and Statutory Construction*, § 21:1 (7th ed. 2021 update).

"interpret statutes, not re-write them." *DiGirolamo v. Apanavage,* 312 A.2d 382, 385 (Pa. 1973).
Thus, the Court will not "add, by interpretation, to a statute, a requirement which the legislature
did not see fit to include." *Shafer Elec. & Constr. v. Mantia,* 96 A.3d 989, 994
(Pa. 2014) (quoting *Commonwealth v. Rieck Inv. Corp.,* 213 A.2d 277, 282 (Pa. 1965)).

Second, the plaintiffs' theory of GEICO's role in the plaintiffs' purchase of an insurance
contract is, quite simply, not how the insurance market operates. The plaintiffs would have GEICO
take on a hyper-paternalistic role and, for those similarly situated to the plaintiffs here, decline to
provide stacking coverage because, according to the plaintiffs, GEICO should know that they
could allegedly not be paid stacked benefits from it. But the law presumes that parties to a contract
understand its terms. *See Kilmore v. Erie Ins. Co.*, 595 A.2d 623, 626 (Pa. Super. Ct. 1991);
2 Steven Plitt et al., *Couch on Insurance*, § 21:6. Indeed, while "insurance is an area in which the
contracting parties stand in somewhat special relationship to each other, the relationship is not so
unique as to compel this Court to require an insurer to explain every permutation possible from an
insured's choice of coverage." *Kilmore*, 595 A.2d at 626–27. Of course, an insurer must abide by
the basic requirement of good faith and fair dealing, but the insurer is certainly *not* required to
engaged in "hand holding and substituted judgment." *Id.* at 626. Here, however, as the plaintiffs
explained their theory to the Court, hand holding and substituted judgment is precisely what they
demand. The plaintiffs want GEICO to take the option of stacking off the table for applicants like
the plaintiffs so they are not given the option to purchase it, even if they want it. The Court declines
to adopt such an approach.

Third, the plaintiffs' approach would, quite obviously, create other problems. Under the
plaintiffs' proposed system, a single-vehicle insured who would not need stacking coverage but
who did not waive stacking coverage would later need to opt in to that coverage that is apparently

laying dormant or inactive in his policy. Consider now a scenario in which an insured moves into a household and qualifies as an insured under another policy in that household. Does the insured automatically have stacking coverage even though he is not paying for it? Or does his dormant stacking coverage not apply until the insured contacts the insurer to opt in to that coverage? Or does the insurer automatically start charging an increased premium because the insured did not waive coverage initially? What if the insured is involved in an accident in the meantime? Is the non-waived but inactive stacking coverage applicable under the insured's after-acquired vehicle clause (*i.e.*, does the dormant coverage spring into existence) even though he is not paying for such coverage? Conceivably, the insured in these imagined scenarios would *not* be able to recover stacked benefits because "[a]llowing [an insured] to reap the benefits of stacked coverage without having paid for stacked coverage not only seems unfair, but could compromise the legislative goal of reducing the cost of insurance." *Rupert v. Liberty Mut. Ins. Co.,* 291 F.3d 243, 249 (3d Cir. 2002).

As the above rhetorical questions demonstrate, the plaintiffs' solution is not a solution at all. Instead, the plaintiffs' proposal would create a system in which insureds who possibly have (or possibly do not have) stacked coverage in their policy would be required to litigate that their failure to *opt in* should not preclude coverage. Maybe the plaintiffs' idea for an opt-in system would be better. Maybe it would not. Either way, that is a policy proposal for the Commonwealth's insurance commissioner, the governor, and the Pennsylvania legislature to decide, not this federal Court. *Fay v. Erie Ins. Grp.,* 723 A.2d 712, 715 (Pa. Super. Ct. 1999), *abrogated on other grounds by Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 648 (Pa. 2021).

Plus, the simplest and most obvious solution is already available. The plaintiffs do not dispute that GEICO offered stacked UM and UIM coverage and also gave them the opportunity to

waive that coverage and receive a discount to their premiums. Pl.'s Resp., at 1, Doc. No. 9-3 ("GEICO also gave Jones the opportunity to elect or waive stacking of uninsured ("UM") and underinsured ("UIM") motorist benefits. Jones agreed to purchase stacking of these coverages. GEICO charged an additional premium for that stacking coverage benefit."). Had the plaintiffs chosen to waive stacking coverage here, they would not be in this predicament. And if their grievance is that the stacking waiver, which insurers are required to provide under Pennsylvania law, does not adequately appraise potential customers of the fact that as a single-vehicle insured they may want to think differently about stacking coverage than a multiple-vehicle insured, that, too, is an issue to take up with the Commonwealth's insurance commissioner, the governor, or the Pennsylvania legislature. *Fay*, 723 A.2d at 715, *abrogated on other grounds by Gregg*, 245 A.3d at 648.

## II. Because GEICO's Coverage Is Not Illusory, Counts I of the Plaintiffs' Complaints for Declaratory Relief Must Be Dismissed

Having determined that GEICO did not provide illusory coverage to the plaintiffs, Count I for Declaratory Relief must be dismissed. The plaintiffs seek a declaratory judgment that the "policies of insurance issued by . . . GEICO . . . provide no stacking coverage benefit for uninsured and underinsured motorist coverages under the MVFRL." Compl. ¶¶ 106, 111, Doc. No. 1-1. This involves the same allegation that GEICO provided illusory coverage.

Under the Pennsylvania Declaratory Judgments Act, a court "may refuse to render or enter a declaratory judgment . . . where such judgment . . . would not terminate the uncertainty or controversy." 42 Pa. Cons. Stat. § 7537. Here, the Court has already determined that GEICO did not provide illusory coverage. Thus, there is nothing for the Court to declare. Plus, declaratory judgment is not "meant simply to proclaim that one party is liable to another," which is the only thing the plaintiffs seek here. *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (internal

citations omitted). Finally, courts do not grant declaratory relief when the relief is duplicative of other causes of action. *Butta v. Geico Cas. Co.*, 400 F. Supp. 3d 225, 233 (E.D. Pa. 2019); *see also LM Gen. Ins. Co. v. Lebrun*, 470 F. Supp. 3d 440, 456 (E.D. Pa. 2020) ("Courts routinely dismiss declaratory judgment claims when they are duplicative of breach of contract claims.") (collecting cases). That the plaintiffs' claim is addressed (and rejected) under other legal theories, therefore, is yet another reason to dismiss it. Therefore, the Court grants GEICO's motions to dismiss Count I of the plaintiffs' complaints in full.

### III.   Counts II and VI of the Plaintiffs' Complaints Do Not State a Cause of Action

Moving to Count II for return of premiums, the plaintiffs assert the identical allegations that GEICO provided illusory coverage. But, regardless, return of premiums is a *remedy*, not a *cause of action. Bouchon v. Citizen Care, Inc.*, 176 A.3d 244, 259 (Pa. Super. Ct. 2017); *see Assoc. Elec. & Gas Ins. Servs., Ltd. v. Rigas*, 382 F. Supp. 2d 685, 691 (E.D. Pa. 2004). Therefore, this count must be dismissed because it is not a claim upon which relief can be granted.

Likewise, under Count VI, the plaintiffs seek injunctive relief. Similar to other claims, the plaintiffs want the Court to prevent GEICO from offering and charging for stacking benefits moving forward. But, as with the plaintiffs' count for return of premiums, the count for injunctive relief must also be dismissed because injunctive relief is a remedy, not an independent cause of action. *Chruby v. Kowaleski*, 534 F. App'x 156, 160 n.2 (3d Cir. 2013); *Slemmer v. McGlaughlin Spray Foam Insulation, Inc.*, 955 F. Supp. 2d 452, 465 (E.D. Pa. 2013).

Therefore, the Court grants GEICO's motions to dismiss as to Counts II and VI of the plaintiffs' complaints in full.

**IV.    Count III of the Plaintiffs' Complaints for Unjust Enrichment Must Be Dismissed Because the Parties Have a Written Contract**

In Count III, the plaintiffs assert a claim for unjust enrichment. This is based on the same assertion that GEICO has been charging the plaintiffs a premium for stacking that provided no stacking benefit. The defendants move to dismiss this count of the plaintiffs' complaints because the parties have a written contract, meaning unjust enrichment cannot apply.

Unjust enrichment can occur only when parties exchanged a benefit *outside of* a contract. *Wilson Area Sch. Dist. v. Skepton*, 895 A.2d 1250, 1254 (Pa. 2006); *see also Khawaja v. RE/MAX Cent.*, 151 A.3d 626, 633 (Pa. Super. Ct. 2016) ("A cause of action for unjust enrichment may arise only when there is no express contract between the parties."). Here, there is no dispute that the parties had a valid and binding insurance contract. Therefore, the Court must dismiss the plaintiffs' count for unjust enrichment.

Attempting to get around this conclusion, the plaintiffs argue that unjust enrichment is the only available remedy because the contract with GEICO provides no remedy. In other words, the plaintiffs argue that they could not sue GEICO under a theory of breach of contract because there was no benefit provided, leaving only unjust enrichment. This argument by is unavailing, however, because the plaintiffs asserted a separate count for return of premiums, which is a form of restitution damages, a standard remedy for breach of contract. *See Assoc. Elec. & Gas Ins. Servs., Ltd.*, 382 F. Supp. 2d at 691 ("In the insurance context, restitution would be the return of the insurance premium."); 24 *Williston on Contracts*, § 64:5 (4th ed. 2022 update). Thus, even by the terms of their own complaints, the plaintiffs were not limited to the remedy of unjust enrichment.

Therefore, the Court grants GEICO's motions to dismiss Count III of the plaintiffs' complaints in full.

V.     **Count IV of the Plaintiffs' Complaints for a Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law Must Be Dismissed Because They Failed to Allege Any Deceptive Practice**

The plaintiffs also claim that GEICO violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL). The plaintiffs claim that GEICO issued single-vehicle policies and charged premiums for a stacking benefit that the consumers could not, and did not, receive. Specifically, the plaintiffs claim that GEICO's conduct constitutes unfair and deceptive practices as defined in 73 Pa. Stat. § 201-2(4)(v)(vii) and (xxi) and thus violates the UTPCPL.

Those sections of the UTPCPL protect consumers from companies doing the following:

(v) Representing that goods or services have . . . benefits . . . that they do not have; . . .
(vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another; . . .
(xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

To state a claim under Pennsylvania's UTPCPL, a plaintiff must allege facts from which the court can plausibly infer: (1) deceptive conduct or representations by the defendant, and (2) justifiable reliance by the plaintiff on the defendant's deceptive conduct that caused the plaintiff's harm.[6] *Toy v. Metro. Life Ins. Co.,* 928 A.2d 186, 208 (Pa. 2007); *Yocca v. Pittsburgh Steelers Sports, Inc.,* 854 A.2d 425, 438 (Pa. 2004). Deceptive conduct is viewed through the eyes of the "consumer acting reasonable under similar circumstances." *Landau v. Viridian Energy PA LLC,* 223 F. Supp. 3d 401, 418 (E.D. Pa. 2016).

The plaintiffs have not alleged that GEICO engaged in any deceptive conduct, as required under the UTPCPL. The plaintiffs have, instead, alleged that GEICO offered them stacking coverage and the ability to waive that coverage, as GEICO was required to do under Pennsylvania

---

[6] Previously, a plaintiff had to allege a cause of action for common law fraud to allege a violation of the UTPCPL, but that is no longer the requirement. *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 224 (3d Cir. 2008); *Peruto v. Santander Bank, N.A.,* No. 16-cv-4092, 2016 WL 6190964, at *5 (E.D. Pa. Oct. 24, 2016).

law. Thus, the plaintiffs' theory is that, by failing to interpret *Generette* as they do, GEICO engaged in a deceptive practice. But, as explained above, *Generette* did not hold what the plaintiffs purport, and GEICO certainly did not engage in a deceptive practice by failing to read *Generette* in a way that no other court has read it. *Berardi*, 2022 WL 2109193, at *3.

At base, therefore, the plaintiffs' argument is that the standard language of the policy and certain endorsements (after the plaintiffs had already purchased it) is deceptive because the policy offers a benefit that the plaintiffs claim they did not and could not receive. This argument runs into two separate problems. First, as explained in detail above, the coverage was not illusory. Second, the plaintiffs do not dispute that they were offered the chance to waive this coverage with a statutorily prescribed waiver form. 75 Pa. Cons. Stat. §§ 1738(b), (d). As the Pennsylvania Supreme Court has explained, "[t]his waiver provision has the salutary effect of providing insureds with detailed notice and knowledge of their rights to UM/UIM coverage absent such formal waiver." *Gallagher*, 201 A.3d at 137. Thus, a better argument (though the plaintiffs do not raise it) would be that the language of the waiver provision itself does not sufficiently alert them to the benefits available for single-vehicle insureds who decline to waive stacking. That, however, would *not* be a claim for a deceptive practice against GEICO, but instead a matter to bring to the attention of the Commonwealth's insurance commissioner, the governor, or the Pennsylvania legislature. *Fay*, 723 A.2d at 715, *abrogated on other grounds by Gregg*, 245 A.3d at 648.

Therefore, the Court grants GEICO's motions to dismiss Count IV of the plaintiffs' complaints in full.

## VI.   Count V of the Plaintiffs' Complaints for Common Law Fraud Must Be Dismissed Because the Plaintiffs Have Not Pled Any False Representations

Finally, the plaintiffs allege a count of common law fraud against GEICO. This claim is based on the same claim that GEICO offered stacking benefits and charged the plaintiffs for that

benefit but provided no benefit to this class of plaintiffs after the Pennsylvania Supreme Court's decision in *Generette*. Thus, the plaintiffs allege that GEICO deliberately refused to warn the plaintiffs that they would receive no stacking benefit and yet charged them for that benefit anyway.

GEICO again moves to dismiss this count, arguing both that the fraud claim is time-barred, and that it fails to state a claim.

Skipping over GEICO's argument that the plaintiffs' claim is time-barred, the plaintiffs have failed to state a claim. To state a claim for common law fraud under Pennsylvania law, the plaintiffs must allege "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Richards v. Ameriprise Fin., Inc.*, 152 A.3d 1027, 1035 (Pa. Super. Ct. 2016) (quoting *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994)). The Federal Rules of Civil Procedure require that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

The plaintiffs' theory as to GEICO's false representations is based on a series of premises. The plaintiffs argue that "GEICO represented to Jones that he could purchase a stacking benefit and, if so purchased, the policy would provide a stacking benefit—a benefit which unfortunately did not exist." Pl.'s Resp., at 40, Doc. No. 9-3. This is, again, based on the theory that *Generette* narrowed or eliminated certain benefits available, and that, because GEICO knew *Generette* had done this, GEICO should not have offered stacking at all.

This argument fails for a number of reasons. First, this theory of false representation is based on a mischaracterization of *Generette*, as explained above. Second, the plaintiffs have not suggested any set of facts under which GEICO made these representations knowing them to be

false. The plaintiffs' theory rests on a novel reading of *Generette*—thus, their theory is essentially that GEICO did not read that case as they did. Third, the plaintiffs have not suggested how it would be fraudulent for GEICO to offer stacking and waiver of stacking *as is required by Pennsylvania state law*. The plaintiffs' theory would actually require GEICO to affirmatively *disregard* Pennsylvania law.

Therefore, the Court grants GEICO's motions to dismiss Count V of the plaintiffs' complaints in full.

## CONCLUSION

Our common law system depends on parties pushing the limits of the law and developing new legal theories. Not all new legal theories, however, provide bases for new claims. Here, the plaintiffs have failed to assert a claim that GEICO provided illusory coverage and have also failed to state any viable cause of action upon which the Court could grant relief. Therefore, the Court grants GEICO's motions to dismiss in full. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE